IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br> v.<br><br>KENNETH ZUAMS CHUNGAG<br><br> Defendant. | Case No. 26-MJ-102-01 |

## GOVERNMENT'S MOTION FOR REVOCATION OF RELEASE ORDER AND SEEKING DETENTION

The United States of America, by and through its attorneys, respectfully moves this Court, pursuant to 18 U.S.C. §§ 3142, 3145(a)(1), and 3142(f)(2) for a review of the release order entered by this Court on April 20, 2026, for the revocation of said release order, and an order seeking pretrial detention of the defendant to ensure the appearance of the defendant at trial.

The defendant is charged with a serious national security offense: conspiracy to provide material support and resources, knowing and intending that they were to be used in preparation for and in carrying out violations of Title 18, United States Code, § 956(a) (conspiracy to kill, kidnap, maim, or injure persons in a foreign country), all in violation of Title 18, United States Code, § 2339A, which carries a maximum of either 15 years of imprisonment or, if death results, life imprisonment.

While the court is generally required to hold a detention hearing in the case of an individual charged with violating 18 U.S.C. § 2339A to determine whether any condition or combination of conditions would reasonably assure the appearance of the defendant as required and the safety of the community, *see* 18 U.S.C. § 3142(f)(1)(A), and a rebuttable presumption exists that there are

2

no such conditions, *see* 18 U.S.C. § 3142(e)(3)(C), the government did not seek detention here. Accordingly, a detention hearing was not held and this Court released the defendant under pretrial supervision and imposed conditions of supervised release, including the requirement to surrender all passports and not travel overseas. The defendant turned over a United States passport and has not violated his terms of release.

Due to changed circumstances, particularly the defendant's recent decision to obtain a yellow fever vaccine and documentation of that vaccination—both of which are required for entry into Cameroon—the circumstances under which the vaccination and vaccination records were obtained, and the defendant's upcoming leave requested from his employer, when considered in light of the defendant's ties to Cameroon and his history of obstructing justice with respect to this investigation, the government submits that the defendant is a flight risk, and the issue of detention should be reopened, pursuant to 18 U.S.C. §3142(f)(2) (". . . .The [detention] hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.")

<u>Standard of Review</u>

The government seeks review of this Court's prior ruling pursuant to 18 U.S.C. § 3145(a)(1). This provision provides that a court with "original jurisdiction over the offense" may review the release order of a magistrate judge. 18 U.S.C. § 3145(a)(1). A review of a detention order is conducted *de novo*. *United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989). "…[F]actors that a judicial officer considers in its pretrial detention decision [include]:

(1) 'the nature and circumstances of the offense charged,' (2) 'the weight of the evidence against the [defendant],' (3) 'the history and characteristics of the [defendant],' and (4) 'the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release.'" *United States v. Vane*, 117 F.4th 244, 250 (4th Cir. 2024) (quoting 18 U.S.C. § 3142(g)(1)–(4)).  And Section 3142 "entitles the government to make evidentiary proffers during detention hearings." *Id*. at 252.

Argument

The government contends that the defendant should be detained because there are no conditions or combination of conditions that will reasonably assure his appearance and reasonably assure the safety of any other person and the community.  This is especially true in this case, where the defendant is facing a potential life sentence, has previously obstructed justice, and the presumption of detention applies.  The government need only prove flight risk by a preponderance of the evidence.  *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985).

**A.      Nature and Circumstances of the Offense**

Here, the nature and the circumstances of the offense are serious, and the weight of the evidence is strong.  The defendant conspired with his co-defendant, and others, to provide material support to the Ambazonia Defense Forces ("ADF"), namely by providing personnel (to include themselves), property (including currency and monetary instruments), financial services, training, and expert advice, to further a conspiracy to kill, kidnap and maim civilians in Cameroon in an effort to fight a war of independence for Ambazonia. *See* Affidavit in Support of A Criminal Complaint, ("Compl.") at ¶¶ 5-19.[1] As part of his conspiracy to provide material support to the

---

[1] These paragraphs provide a summary of the history of the Anglophone crisis in Cameroon, the history of tensions between Anglophone and Francophone Cameroon which led to the formation of the ADF, and how the ADF

4

underlying conspiracy, Chungag used his military experience, training and background as a Major in the United States Army to educate ADF members on various military tactics. *Id.* at ¶¶ 20-21. For example, he provided ADF leaders with advice on where to deploy troops, how best to develop intelligence, which locations to target for improvised explosive device (IED) attacks, how to clear malfunctions on an A2 assault rifle, After Action Reviews (AARs) of combat operations, what kinds of infrastructure to target, how to conduct "economic sabotage", and more. *Id.* at ¶¶ 23-39, 42-47. He also provided financial support to the ADF through over $7,500 in payments to his co-defendant, the ADF treasurer, and known ADF fundraising accounts. *Id.* at ¶¶ 57-71. As a result of his contributions, in December 2021, Chungag was initiated by the head of the ADF, Benedict Kuah ("Kuah"), into the ADF War Council as the Chief of Defense Operations. *Id.* at ¶¶ 40-41. He was also later tasked with commanding a special forces group in the Meme Division of Southwest Cameroon, before he had a falling out with the organization's members and formally resigned in April 2024. *Id.* at ¶¶ 51-56, 72.

The weight of the evidence in this case is strong because all of Chungag's messages comprising his material support violation were obtained through search warrants of Kuah's phone, co-defendant Mercy Ombaku's ("Ombaku") phone, and the phones of other witnesses and ADF members. The government has evidence of the defendant's financial transactions through legal process returns to his financial institutions. Further, when the Federal Bureau of Investigation (FBI) interviewed the defendant in September 2024 about his involvement with the ADF and confronted him with incriminating evidence, the defendant confessed to much of his criminal conduct in violation of 18 U.S.C. § 2339A.

---

promotes violence, including against Cameroonian civilians. Familiarity with these facts is assumed for purposes of this motion.

5

Additionally, within 24 hours prior to meeting with the FBI in 2024, the defendant obstructed justice by deleting his communications with Kuah and many other ADF members. When the defendant appeared for a voluntary interview with the FBI in September 2024, FBI agents seized his cellphone pursuant to a search warrant, and observed contact information for Kuah, Ombaku, and others believed to be affiliated with the ADF. However, upon closer inspection, agents noticed that there was no observable record of current or historical communications between the defendant and Kuah, Ombaku or other known ADF members. Upon questioning from the agents, the defendant admitted that he had deleted the communications before coming in to meet with the FBI because he was nervous about them. *Id.* at ¶¶ 73-81.

**B.      History and Characteristics of the Defendant**

The defendant was born in Cameroon and, after becoming a naturalized United States citizen in 2003, continued to maintain significant ties to the country. He has two sisters currently living in Cameroon and owns property, which law enforcement believes is a residence which he rents out, in Cameroon. He has traveled there on multiple occasions, with his most recent trip to Cameroon being in 2023. Given his conduct in the underlying offense, he maintains a deep connection with his Cameroonian identity and a conviction to bring justice to Ambazonians in in Cameroon. Indeed, he identifies Cameroon—not the United States—as his homeland. *See Id*. at ¶ 40 (December 11, 2021, message from Chungag to Kuah reading: "I will like to officially request from you and leadership to be a member of the defense council. I think my counsel and services are needed for a emancipation of our homeland."); *Id.* at ¶ 49 (January 1, 2024, message from Chungag in "War Coordination Council" group chat stating: "Today January 01, 2024, I pledge my solemn loyalty to the ADF/AgovC to its commitment to the Federal Republic of Ambazonia.

6

I commit my allegiance to freedom of the people of Ambazonia. To increase my contribution until freedom and independence is achieved. So help me God. KC.")

1.     **Recent Events**

On May 7, 2026, undersigned counsel learned from the defendant's employer, the United States Army, that the defendant had visited the Army hospital's walk in immunization clinic on May 4, 2026, with a physician's order for a yellow fever vaccination. The defendant obtained the vaccination on May 5, and requested a record of his immunizations before leaving the clinic.

While speaking to the nurse at the clinic, the nurse noted that the defendant seemed anxious and in a hurry to get the vaccine; he was irritated that, after asking for the vaccine on May 4, he was asked to come back the following day. Given his demeanor, the fact that yellow fever is not a standard vaccine required within the United States or for Army employees, and the fact that the defendant requested and left with a copy of his immunization records, the nurse believed the defendant was either being deployed or imminently planning on traveling to a country that requires records of the vaccination. Cameroon is one such country.

While the defendant has surrendered his U.S. passport to pretrial services, and claims that he does not have a Cameroonian passport, the defendant's decision to obtain a yellow fever vaccine and, notably, leave the immunization clinic with *a requested record of his vaccinations*, is alarming and suggests plans to travel overseas in the near future.

Notably, the defendant's visit to the immunization clinic was made within a few days after the government spoke to the defendant's attorney about the applicable life guidelines in this case, particularly if this case proceeds to indictment. Additionally, on May 4, 2026, the same day that he tried to get the vaccine, the defendant put in a request for leave with his employer for the week

7

of May 25-30, 2026, stating his reason as wanting to visit his family in Pennsylvania, which is permitted under the conditions of his release.

Considering these recently obtained facts in light of the defendant's familial and financial ties to Cameroon, his self-proclaimed identity as a Cameroonian at heart, his demonstrated commitment to fighting for the Ambazonian cause, his prior obstruction of justice in an effort to escape the consequences of his criminal activities, as well as the defendant's likely realizations of the penalties he faces if he is convicted of the instant crimes, the government submits that no condition or combination of conditions exist to reasonably assure the defendant's future appearances.

## Conclusion

The government respectfully requests that this Court issue an order revoking its release order.  The government submits that detention of the defendant pending trial in this matter is the only reasonable condition to assure his next appearance.  A detention hearing on this matter is respectfully requested pursuant to 18 U.S.C. §§ 3142(f)(2) and 3145(a)(1).

Respectfully submitted,

By:       /s/
Sehar F. Sabir
NY Bar: 5431762
Nicholas Durham
Assistant United States Attorneys
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3700
Fax: (703) 299 3981
Email: sehar.sabir@usdoj.gov

8

CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of May 2026, I filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send an electronic notification to all counsel of

record.

_____/s/_____
Sehar F. Sabir
Assistant U.S. Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700
(703) 299-3981 (fax)
Email: sehar.sabir@usdoj.gov